WATERLOO, CEDAR FALLS & NORTHERN RAILWAY COMPANY, Appellee, v. INCORPORATED TOWN OF CEDAR HEIGHTS, Appellant.

**MUNICIPAL CORPORATIONS:** Public Improvements—Paving—
1 **Value of Property.** On the issue whether property was assessed for a pavement in excess of 25 per cent of its value, the inquiry must be confined to the time *when the improvement was laid and the assessment ordered.* So held where, on appeal, effort was made to show a *subsequent* depreciation in value.

**TAXATION:** Assessment of Railway—Value as Fixed by Executive
2 **Council.** The value placed by the executive council on a railway right of way is presumptively correct.

**MUNICIPAL CORPORATIONS:** Public Improvements—Assessments—
3 **Presumed Benefits Absorbed by Damages.** The presumption of correctness attending an assessment for paving against an interurban railway right of way equal to full 25 per cent of the value of said property, is not overcome, and the counter fact is not established (that the paving resulted in a damage to the property greater than any and all presumed benefits), by testimony showing (1) that the right of way was simply an easement; and (2) that, *very soon after the levy,* the property greatly depreciated in value. Especially is this true when the cause and permanency of the depreciation are somewhat problematical.

*Appeal from Black Hawk District Court.*—E. B. STILES, Judge.

JUNE 28, 1924.

IN the district court, this was an appeal by the plaintiff railway company from a certain paving assessment ordered against its property by the city council of the defendant. Upon a hearing in the district court, partial relief was awarded to the plaintiff. From such order, the defendant appealed. Thereafter, the plaintiff also appealed.—*Affirmed.*

*Pike, Sias, Zimmerman & Frank,* for appellant.

*Pickett, Swisher & Farwell,* for appellee.

EVANS, J.—I.   The plaintiff is and was the owner of a certain interurban line of railway, electrically operated, between Waterloo and Cedar Falls.   Its length is seven and one-half miles.   It passes through the residential parts of the town of Cedar Heights, and occupies the center of a street known as Grand Boulevard.   Its right of way is 30 feet wide, and contains no other improvements than the ordinary track and ballast.   A paving was ordered and laid on Grand Boulevard.   This consisted of a 9-foot strip of paving on each side of plaintiff's right of way, and abutting thereon.   The abutting frontage was .36 of a mile (1,920 feet) on each side.   The assessment ordered was $3,590.   A width of 15 feet of plaintiff's right of way was deemed to be abutting upon the pavement upon each side, respectively, and assessment was made accordingly upon the right of way in two zones, of the width of 15 feet each.   The trial court reduced the assessment to $1,035.

The contention for the plaintiff is threefold:   (1)    That it received no benefit whatever from the paving, and that, therefore, it should not have been assessed at all; that the court is

1. MUNICIPAL CORPORATIONS: public improvements: paving: value of property.

bound to take notice of its constitutional rights, regardless of the legislative character of the order of the establishment of the paving district, which included therein plaintiff's right of way; (2) that, in any event, the amount of the assessment as ordered by the city council grossly exceeded any possible benefits to the plaintiff, and that the order of the district court granting partial relief was yet wholly inadequate; (3) that the assessment ordered by the city council was grossly in excess of 25 per cent of the value of plaintiff's right of way; and that the order of the district court was predicated upon a valuation in excess of the actual value of plaintiff's property.

The question raised by the third contention is the most tangible one, upon this record, and we give to it our first attention.   What was the fair market value of plaintiff's included

right of way in 1921, when the improvement was laid and the assessment ordered? The answer to this question involves numerous collateral facts and some history and some degree of conjecture.

The plaintiff's railway began operation in 1897. It operated from business center to business center of Waterloo and Cedar Falls. Originally, there were no intervening towns. In the course of years, two little towns were located upon this line of railway. One of these was Cedar Heights. Its site was selected for residential purposes. It was located astride the plaintiff's right of way, and midway between Waterloo and Cedar Falls. Its principal residential street is Grand Boulevard. This street was established in two zones, each twenty feet wide, and abutting on each side of the right of way. In this manner, the plaintiff became the occupant of the central zone in the town's principal thoroughfare. The population of the town is 400.

It further appears that, in 1919, a paved highway was laid between Waterloo and Cedar Falls, known as the Rainbow Drive. This runs parallel with plaintiff's right of way, at a distance of 400 feet. One of the inducements, and doubtless the principal one, for the paving of Grand Boulevard was to connect this residential street with Rainbow Drive. The construction of the pavement established this connection. This resulted, as contended by plaintiff, in greatly depreciating the value of plaintiff's railway line, in that it opened a new and competing avenue of traffic, and in that the great body of traffic, both freight and passenger, which had previously been carried by the plaintiff, now took to the paving. Plaintiff has since found it impossible to regain such traffic, and finds itself wholly helpless to meet the competition of truck and motor bus and auto. This is the line of proof introduced by plaintiff as bearing upon the depreciated value of its line of railway. The assessment of value placed by the executive council upon the plaintiff's line of railway for 1920 and 1921 was $20,000 per mile. 57 per cent of this rate represents the value of right of way and trackage. The trial court adopted the amount thus fixed by the executive council as being the presumptive value, and took 57 per cent thereof, and apportioned the same to that part of plaintiff's right of way

involved herein. Plaintiff introduced testimony to the effect that this part of its line, under present conditions, was not worth in excess of 57 per cent of $5,000 per mile, and, in short, that it had no other than junk value; whereas, the defendant introduced testimony to the effect that plaintiff's line was worth two or three times more than the value fixed by the executive council. We may as well note in passing that, though this testimony for defendant purported to be expert opinion, it was manifestly lacking in expert quality. The plaintiff proved that, for some years prior to 1921, it had a large and increasing business, both in freight and passenger traffic. Since that time, it had lost all its freight business, and had withdrawn its freight cars from the line. A schedule of its monthly earnings from passenger traffic, beginning in 1916 and ending in 1922, is incorporated in the record. This schedule shows an increasing monthly return, which reached its peak in the later months of 1919 and continued through the year of 1920. The year 1921 showed a monthly decrease in passenger receipts. In that year, the gross passenger receipts were less than the operating expenses. The more significant decrease, however, occurred in the year 1922, when the gross receipts of the line were less than one half the operating expenses. The emphasis of argument is directed to the showing for that year. The opinion of plaintiff's witnesses on the question of value is predicated largely upon the showing for the year 1922. We are impressed with the persuasive character of the showing, but it does not meet the situation presented to us. Our inquiry of value must be directed to the time when the improvement was laid and assessment was made. This was in 1921. If, at that time, the assessment made was fairly sustained by the facts and circumstances then existing, the plaintiff could not thereafter become entitled to a revaluation of its abutting property because of subsequent events, or to a reassessment because of subsequent depreciation in value of the abutting property. The trial in the district court was had in March, 1923. The events of 1922 were then available as evidence. But they were not thus available in November, 1921, when the assessment appealed from was made. The burden was upon the plaintiff to show the alleged depreciation of value of

the property, not as it was in 1923 or in 1922, but as it was in November, 1921. If the plaintiff had introduced substantive evidence that the depreciation had taken place on or prior to November 21, 1921, it is doubtless true that the subsequent condition appearing in 1922 might be receivable as corroborative evidence. But such subsequent condition is not of itself substantive evidence that the fair market value of plaintiff's property had depreciated on or prior to November, 1921. Upon the elimination from our consideration, therefore, of the events of 1922, it leaves the record void of evidence to overcome the presumption in favor of the valuation put upon the plaintiff's property by the executive council. On the other hand, the record is likewise void of any evidence on behalf of defendant to overcome the same presumption, and to sustain its contention that the property of plaintiff had a valuation largely in excess of the amount fixed by such executive council.

2. TAXATION: assessment of railway: value as fixed by executive council.

We hold, therefore, as against the contention of each party on its appeal, that the trial court properly adopted the valuation of the executive council.

II. Our foregoing conclusion fully disposes of the appeal of the defendant. Accepting the valuation of the executive council, the trial court entered the maximum assessment of 25 per cent. The question still remains on plaintiff's appeal whether such maximum assessment was in excess of benefits received. The same burden rests upon plaintiff at this point. Its argument is that the construction of this paving operated greatly to its damage, and that such damage completely absorbed all benefits which might otherwise be deemed to accrue to its abutting property. To put it in another way, it contends that it received no benefit, and that, on the contrary, it suffered great damage. As evidence of such fact, its chief reliance is put upon the subsequent events, as indicated in the foregoing division hereof. It suffered a considerable loss of business in 1921, and a greatly increased loss in 1922. Is this sufficient substantive evidence to negative presumptive benefits, on the theory that damage, rather than benefit, was sustained? Our discus-

3. MUNICIPAL CORPORATIONS: public improvements: assessments: presumed benefits absorbed by damages.

sion of the evidence in the foregoing division has its application here also.

There is a further consideration that militates against the force of the plaintiff's contention at this point. The principal business of this branch line of the plaintiff's was presumably done upon the whole line between Waterloo and Cedar Falls. These two cities had large populations. Plaintiff's cars moved constantly from one terminal to the other. Presumably, the larger part of plaintiff's business must have originated within these two larger cities. Cedar Heights was a mere hamlet, of only 400 people. The loss of business to plaintiff cannot be accounted for by assuming that its normal business at Cedar Heights had fallen off. There must have been other substantial cause, not attributable to 1,920 feet of paving on Grand Boulevard. In May, 1921, motor busses were put on Rainbow Drive, which plied their trade between Waterloo and Cedar Falls. Presumably they thereby divided the traffic with the plaintiff. Rainbow Drive passed through Cedar Heights, though not over Grand Boulevard. It necessarily was accessible to all the private automobiles owned in Waterloo, Cedar Heights, or Cedar Falls. All this was true before the paving enterprise on Grand Boulevard was undertaken. By the paving of Grand Boulevard, it is true, the inhabitants residing thereon were enabled to use the paving for a direct connection with Rainbow Drive. It is the necessary effect, and indeed the purpose, of all street paving to permit connection with other highways. Was the paving on Grand Boulevard to be deemed presumptively less beneficial to abutting property on that account? All street and highway improvement is an invitation to highway traffic to be conducted thereon with every form of practicable vehicle. In so far as common carriers avail themselves of such highway privilege, they become competitive with all other carriers. It is assumed by plaintiff in argument that the discouraging conditions of 1922 can never be remedied. But upon the record, this is merely an assumption. The entry of the common carrier upon the public highway is in its experimental stage. It has still to reckon with an undetermined overhead. The range of its competition and the power of it are still to be ascertained. That it has

advantages, within a certain range, over more expensive equipment seems highly probable. But this does not mean that the larger units of common carriage are to be thereby necessarily destroyed, or to be driven out of business. It can as well be assumed that their larger capacity must still be in demand, even though the field of their activity be shifted by the pressure of the smaller competitions.

Plaintiff urges upon us that it is not the owner of its right of way, but has a mere limited easement therein. It has no right to use the property for other than for the operation of an interurban railway. It can erect no structures thereon. Its easement thereof reverts to its grantor upon the abandonment of the railway line as such. This fact has its importance, and is entitled to consideration as tending to reduce the benefits which might otherwise result to the plaintiff. Is it a sufficient reason for saying that the benefit thereto is less than the amount fixed by the district court? That it affords a convenience to plaintiff's passengers in their ingress and egress to and from trains is not disputed. That it is an added convenience for the reception and delivery of freight to and from its freight cars is quite manifest. How much money value may be attached to such conveniences is a matter of approximation, at best, and of some degree of conjecture. Clearly, it was some benefit to the plaintiff as an operating concern. If we were to say that such benefit was of smaller value than that fixed by the district court, we are unable to discover in the record any evidence that would warrant us in saying that a smaller benefit was better proved than that fixed on by the district court. Upon first impression in the submission of this case, we were disposed to reduce the assessment. Upon further consideration and a careful examination of the entire record, we have been constrained to the view that we would not be warranted in reducing the amount fixed by the district court. The judgment below is, accordingly, affirmed on both appeals.—*Affirmed on both appeals.*

ARTHUR, C. J., PRESTON, STEVENS, FAVILLE, and VERMILION, JJ., concur.